# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-24274-CIV-MORENO/LOUIS

ALEXIS RAMOS,

     Plaintiff,

vs.

KILOLO KIJAKAZI, Commissioner
of the Social Security Administration,[1]

     Defendant.

_____/

## REPORT AND RECOMMENDATION

**THIS MATTER** is before the Court on Plaintiff Alexis Ramos' Motion for Summary Judgment (ECF No. 20) and Defendant Kilolo Kijakazi's, Commissioner of the Social Security Administration ("Commissioner"), Motion for Summary Judgment with Supporting Memorandum of Law and Opposition to Plaintiff's Motion for Summary Judgment (ECF No. 23). Plaintiff did not file a reply. The Honorable Federico A. Moreno, United States District Judge, referred the cross motions to the undersigned Magistrate Judge for a Report and Recommendation (ECF No. 2). The undersigned has fully considered the Motions, the record, and is otherwise duly advised in the matter, and hereby recommends that Plaintiff's Motion for Summary Judgment be **DENIED**, and Defendant's Motion for Summary Judgment be **GRANTED**.

## I.     PROCEDURAL BACKGROUND

This case involves an application for Social Security disability benefits under the Social

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit.

Security Act (the "Act"), 42 U.S.C. § 401, *et seq.*  On July 12, 2005, Plaintiff filed an application for Disability Insurance Benefits, alleging an ongoing disability that began on March 10, 2005 arising from depression and an anxiety-related disorder (ECF No. 16, at 92, 94).  The subsequent determination found Plaintiff disabled as of the alleged onset date (ECF No. 16, at 111).  A continuing disability review ("CDR") conducted in November 2009 confirmed that Plaintiff's disability continued (ECF No. 16, at 88), while a second review conducted on April 12, 2013 determined Plaintiff was no longer disabled (ECF No. 16, at 140-45).  Plaintiff sought reconsideration, and a hearing conducted by a state agency disability hearing officer affirmed the April 2013 determination (ECF No. 16, at 152-58).

Plaintiff sought a hearing before an administrative law judge ("ALJ") and following an initial hearing on March 31, 2015 and a supplemental hearing on July 21, 2015, ALJ Lornette Reynolds too determined that Plaintiff's disability ended as of April 1, 2013 (ECF No. 16, at 111-125).  The Appeals Council granted Plaintiff's subsequent request for review on May 9, 2017 and remanded the matter for (1) an evaluation as to whether Plaintiff became disabled again after the April 1, 2013 cessation; (2) a renewed evaluation of the severity and/or effects of Plaintiff's mental impairment in light of ALJ Reynolds' failure to include a rationale for the "B" criteria using the special technique described in 20 C.F.R. § 404.1520a; and (3) further consideration of Plaintiff's maximum residual functional capacity ("RFC") during the entire period at issue, obtaining evidence from a Vocational Expert ("VE") if warranted (ECF No. 16, at 133-34).

Following a remand hearing on August 14, 2018, at which VE Howard Steinberg appeared for the first time, ALJ Reynolds issued a second decision finding that Plaintiff's disability ended as of April 1, 2013 and he did not become disabled again through the date of the decision (ECF No. 16, at 29-47).  The Appeals Council denied Plaintiff's requested for review of the latest

determination by ALJ Reynolds (ECF No. 16 at 1-5), and Plaintiff then commenced the instant action seeking judicial review of the proceedings under 42 U.S.C. § 405(g).  This Report and Recommendation follows.

## II.    REGULATORY FRAMEWORK

A claimant must be "disabled" to be eligible for Social Security benefits.  42 U.S.C. § 1382. A claimant is disabled if she is unable to "engage in any substantial activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A).  A "physical or mental impairment" is one that "results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 1382c(a)(3)(D).  The Commissioner is required by statute to periodically review the continuing entitlement of disability recipients.  42 U.S.C. § 423(f); 20 C.F.R. § 404.1594.  Entitlement to disability benefits ceases when the claimant's medical condition improves sufficiently to permit him to engage in substantial gainful activity.  42 U.S.C. § 423(f)(1).

The Social Security regulations outline an eight-step sequential evaluation process that an ALJ must follow to determine whether a claimant's medical condition has improved or if a disability continues.  20 C.F.R. § 404.1594(f).  This process requires that the ALJ first determine whether the claimant is presently engaged in substantial gainful activity.  20 C.F.R. § 404.1594(f)(1).  If so, a finding of "no disability" is made.

If the claimant is not engaged in such work, then the ALJ must proceed to the second step and determine whether the claimant suffers from an impairment or combination of impairments which meets or equals the severity of an impairment listed in Appendix 1 of Subpart P of

Regulations No. 4.  If so, the claimant's disability will be found to continue.  If not, the ALJ proceeds to the next step of the analysis.

The third step requires the ALJ to determine whether there has been medical improvement in the claimant.  Medical improvement in this context is measured by whether there has been a decrease in the medical severity of impairments present at the time of the claimant's most recent favorable medical decision finding him to be disabled or continuing to be disabled.  *Klaes v. Commr of Soc. Sec.*, 719 Fed. Appx. 893, 895 (11th Cir. 2017) (citing 20 C.F.R. § 404.1594(b)(1)).  This medical improvement relates to a claimant's ability to work where the severity of those impairments is coupled with an increase in the claimant's functional capacity to do basic work activities.  *Id*. (citing 20 C.F.R. § 404.1594(b)(3)).  A finding of decreased medical severity must be predicated on "improvement in the symptoms, signs, and/or laboratory findings associated with [the claimant's] impairment(s)."  *Id.* (citing 20 C.F.R. § 404.1594(b)(1)).  To render this determination the Commissioner must compare the medical evidence supporting the most recent favorable decision against new medical evidence.  *Id*. (citing *McAulay v. Heckler*, 749 F.2d 1500, 1500 (11th Cir. 1985) (per curiam)); *see also* 20 C.F.R. § 404.1594(c)(1).  If there has been medical improvement as shown by a decrease in medical severity, the ALJ proceeds to step four; if there has been no medical improvement, the ALJ proceeds to step five.

Step four requires the ALJ to determine whether the medical improvement is related to the claimant's ability to work, meaning, whether or not there has been an increase in the RFC based on the impairment(s) present at the time of the claimant's most recent favorable medical determination.  The Regulations define RFC as "the most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1).  This determination takes into account "all of the relevant medical and other evidence," including the claimant's own testimony and the observations of others.  20 C.F.R.

§ 404.1545(a)(3).  If the medical improvement is not related to the claimant's ability to work, the ALJ proceeds to step five.  If the improvement is related to a claimant's ability to work, the ALJ proceeds to step six.

The ALJ considers in step five whether, despite the fact that there has been no medical improvement or despite the fact that the medical improvement is not related to a claimant's ability to work, any of the exceptions enumerated in § 404.1594(d) or § 404.1594(e) apply.  If no exceptions apply, then the claimant continues to be disabled.  If one of the exceptions from group (e) applies, the claimant's disability will be terminated.  If one of the exceptions from group (d) applies, the ALJ will proceed to step 6.

In step six, the ALJ analyzes whether the claimant's impairments are severe in combination.  This determination by the ALJ considers all of a claimant's current impairments and the impact of the combination of those impairments on the claimant's ability to function.  Where the RFC from step four shows significant limitations in a claimant's ability to do basic work activities, the ALJ proceeds to step seven.  Where the ALJ finds that the evidence shows the current combination of impairments do not significantly limit a claimant's physical or mental abilities to do basic work activities, these impairments will not be considered severe in nature, and the ALJ will make a finding of "not disabled." 20 C.F.R. § 404.1545(f)(6).

If the impairments are severe, the ALJ in step seven assesses the claimant's current ability to engage in substantial gainful activity in accordance with § 404.1560, meaning that the ALJ will assess the claimant's RFC to determine whether the claimant can perform his past relevant work.  For this analysis, the ALJ compares the RFC with the physical and mental demands of the claimant's past relevant work to determine whether the claimant is still capable of performing that kind of work.  If so, the claimant is found not disabled.  20 C.F.R. § 404.1545(f)(7).

If the ALJ determines that the claimant cannot perform her past relevant work, the adjudicator will assess whether the claimant can do other work based on the findings within the RFC and the claimant's age, education, and past work experience. To help evaluate whether sufficient jobs exist that can be performed given the claimant's age, education, and physical limitations, the Commissioner has promulgated Medical Vocational Guidelines. *See* 20 C.F.R. § 404, subpt. P, app. 2. The guidelines may apply "where a person is not doing substantial gainful activity and is prevented by a severe medically determinable impairment from doing vocationally relevant past work." 20 C.F.R. § 404.1569. The guidelines are composed of detailed grids and rules, which direct a finding of disabled or not disabled based on a claimant's RFC, age, education, and previous work experience. *Walker v. Bowen*, 826 F.2d 996, 1002 (11th Cir. 1987).

Yet, the guidelines "do not cover all possible variations of factors" and are inapplicable "if one of the findings of fact about the person's vocational factors and [RFC] is not the same as the corresponding criterion of a rule." 20 C.F.R. § 404.1569. Therefore, "[e]xclusive reliance on the grids is not appropriate either when [the] claimant is unable to perform a full range of work at a given residual functional level or when a claimant has non-exertional impairments that significantly limit basic work skills." *Phillips v. Barnhart,* 357 F.3d 1232, 1242 (11th Cir. 2004) (citation omitted); *see also Walker*, 826 F.2d at 1002-03. The Commissioner may carry her burden through the use of a VE when exclusive reliance on the guidelines is not appropriate. *Chaney-Everett v. Astrue*, 839 F. Supp. 2d 1291, 1299 (S.D. Fla. 2012) (citation omitted). A VE provides the ALJ with a realistic appraisal of the work that a claimant is capable of performing. *Id*.

### III.   ADMINISTRATIVE FINDINGS

#### A.  Summary

Plaintiff, who was 45 years old[2] at the time of ALJ Reynolds' decision and had a ninth-grade education, had past relevant work in maintenance and as a donut maker, but alleged that he was unable to work, drive, or be alone generally due to a panic attack disorder (ECF No. 16, at 518).  The ALJ found November 4, 2009 to be the comparison point decision (CPD), noting that the review conducted at the time found that Plaintiff met the definition for an anxiety disorder, but that Plaintiff experienced medical improvement as of April 1, 2013 and no longer met the same definition that he did at the time of the CPD.  Though the ALJ found that as of April 1, 2013 Plaintiff continued to suffer from an anxiety-related disorder, after considering the limiting impact of Plaintiff's impairments, the ALJ found Plaintiff had the RFC to perform a range of light work as defined in 20 C.F.R. § 404.1567 with the ability to lift, carry, push and/or pull 20 pounds occasionally and 10 pounds frequently; stand and/or walk with normal breaks 6 hours in an 8-hour workday; and sit with normal breaks 6 hours in an 8-hour workday.  The ALJ further limited Plaintiff to the following:

> [Plaintiff may] occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds; occasionally kneel, crouch and crawl; frequently stoop.  The claimant has no established manipulative, visual or communicative limitations. Environmentally, he should avoid concentrated exposure to heavy vibration and hazards such as unprotected heights and should not operate dangerous machinery. He should also avoid concentrated exposure to extreme cold and no job requiring the operation of foot controls with the left lower extremity.  The claimant is able to understand, remember and carry out simple, routine, repetitive tasks and instructions.  He can sustain attention/concentration for 2-hour periods at a time and for 8 hours in the workday on simple, routine repetitive tasks and instructions. He can use judgment in making work decisions related to simple, routine, repetitive tasks and instructions.  He requires occupation[s] with only occasional co-worker contact, working in small group settings of no more than five people at a time and no work requiring collaboration with other co-workers as an integral part of the job function.  He can work with minimal supervision but he requires occupation with

---

[2] Under 20 C.F.R. § 404.1563, an individual of 45 years of age is defined as a younger individual age 18-49.

7

set routine and procedures, and few changes during the workday.  He is limited to superficial interaction with the public on routine matters.  He should not engage in fast paced assembly-line type production work; can maintain regular attendance and be punctual with customary tolerances; and can perform activities within a schedule.

(ECF No. 16, at 38-39).

The ALJ found that these limitations precluded Plaintiff from performing his past relevant work, but after applying the Medical Vocational Guidelines and accounting for Plaintiff's age, education, work experience, RFC, and the VE's testimony, the ALJ found Plaintiff could perform certain other jobs within the national economy, including that of a hotel housekeeper and an office mail clerk.  The ALJ found, therefore, that Plaintiff's disability ended on April 1, 2013 and had not resumed through the decision date.

### B.  The ALJ's Application of the Sequential Evaluation

After considering the evidence, the ALJ first found that Plaintiff was not engaged in substantial gainful activity.  While she observed that Plaintiff did perform some work during the trial period and the extended period of eligibility, the ALJ concluded that this was not substantial gainful activity as contemplated by the regulations and further observed that Plaintiff had no documented work activity or reported income from 2010 to the present (ECF No. 16, at 32).  The ALJ also found that the medical evidence established that, as of April 1, 2013, Plaintiff suffered from the following medically determinable impairments:  (1) anxiety-related disorder; (2) degenerative joint disease of the left knee; and (3) obesity.  The ALJ found, however, that none of these impairments alone or in combination with one another rose to the level of a severe impairment as contemplated in the listings in the federal regulations.

First, the ALJ found that Plaintiff's degenerative joint disease of the left knee did not meet the definition of major disfunction.  The ALJ observed that Plaintiff reported in April 2013 that he

did *not* have knee problems and that he had not at that point seen a doctor or been treated for knee impairment.  While a later 2016 MRI documented a severe impairment, this impairment was not at the listing level, the ALJ found.  Overall, the ALJ found the administrative record did not document an inability to ambulate effectively.

The ALJ next considered obesity and its potential to limit Plaintiff's ability to function in line with the regulation.  Plaintiff, at five feet six inches tall and weighing 269 pounds as of the July 9, 2013 consultative examination report, met the criteria for obesity with a body mass index in excess of 30.  The ALJ found that the record evidence did not demonstrate Plaintiff's weight was disabling, either alone or in conjunction with Plaintiff's other conditions, but noted the propensity for obesity to functionally limit basic work activities and increase the chances of developing impairments in other body systems.  Accordingly, the ALJ found that Plaintiff's obesity could fairly render the medically determinable orthopedic impairment of Plaintiff's knee to be more limiting and preclude Plaintiff from performing more than light physical exertion, but no evidence in the record would limit him to *less* than light physical exertion.

As to Plaintiff's mental impairments, the ALJ concluded that the severity did not meet the criteria for listing 12.06.  Satisfying the "paragraph B" criteria requires the mental impairment to cause at least one extreme or two marked limitations in the following broad areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and/or (4) adapting or managing oneself.  An extreme limitation means that independent, appropriate, and effective functioning on a sustained basis in the area is not possible, while a marked limitation means the ability to do so is seriously limited.  ALJ Reynolds concluded that Plaintiff's mental impairments caused only mild to moderate limitations in these functional areas.

The ALJ found mild limitations regarding Plaintiff's ability to understand, remember, or apply information. ALJ Reynolds found the record absent of evidence reflecting significant cognitive or learning impediments in this area, and she further observed evidence as of April 2013 that Plaintiff performed a range of activities demonstrating his functioning in this area as to simple, routine, and basic tasks. A July 17, 2013 Report of Contact reflected Plaintiff's self-reported ability to attend to his own basic needs and assist in caring for his daughter; the Report described activities such as taking his medication daily on his own, making simple meals, driving short distances, keeping track of funds independently, playing with his daughter, watching television, and keeping track of appointments. The ALJ observed that Medical reports reflected Plaintiff's response to treatment, did not document a decline in functioning, and found that apart from the noted anxiety and impaired memory that Plaintiff overall was alert and oriented with fair reliability, concentration, insight, and judgment, with an intact thought process and unremarkable thought content.

ALJ Reynolds found that Plaintiff was moderately limited in interacting with others. Though acknowledging Plaintiff's claims that he suffers from panic attacks with agoraphobia and does not want to be alone, ALJ Reynolds noted the record evidence of Plaintiff driving, shopping in stores, running errands, attending church services for their duration, and interacting with his family. Further contradicting Plaintiff's claim that he suffers from panic disorder with agoraphobia with *worsening* symptoms, ALJ Reynolds observed clinical notes documenting stable panic attacks controlled with medication, improved symptoms, and a diagnosis of panic attacks without agoraphobia. Examinations during the course of treatment and evaluations of Plaintiff reflected an ability to engage and relate with others using good eye contact, and further found his mood and affect to be well-adjusted, pleasant, cooperative, and appropriate in clinical and

encounter circumstances.  ALJ Reynolds found these examinations showed Plaintiff's ability to interact with others appropriately, particularly with familiar individuals in smaller settings.

ALJ Reynolds also found moderate limitations regarding Plaintiff's ability to concentrate, persist, or maintain pace.  Noting Plaintiff's reported difficulty with prolonged concentration (citing his inability to watch television for a certain duration without daydreaming) and noting that documentation reflected Plaintiff's impaired memory during some visits, ALJ Reynolds observed that medical reports also documented Plaintiff's anxiety with a mostly intact thought process and content, Plaintiff's denial as to suffering from any hallucinations or delusions, and that Plaintiff experienced improvement with minimal medication adjustment and minimal to no medication side effects.  ALJ Reynolds considered Plaintiff's functional activities as described above and that Plaintiff engaged in substantial gainful activity during the trial work period and extended period of eligibility through 2009.  Though she noted that the latter was not disqualifying, these things suggested to her that Plaintiff was "more functional than acknowledged."

ALJ Reynolds found Plaintiff experienced mild limitations as to adapting and managing himself, first noting the array of functional activities carried out by Plaintiff since April 2013 and observing Plaintiff's independence in his self-care and ability to assist in the care of his infant daughter.  These activities contradicted Plaintiff's claims that he does not and cannot drive at all and that he must constantly be with his mother.  Further, ALJ Reynolds noted that Plaintiff's treating source, psychiatrist Dr. Antonio Tauler, documented moderate symptoms and that Plaintiff's panic disorder diagnosis is episodic paroxysmal anxiety without agoraphobia; though Plaintiff testified to medication side-effects at the March 2018 hearing, ALJ Reynolds found this contradicted by the documentation in the clinical notes that also observed Plaintiff's symptoms were well-controlled with medical treatment.  Plaintiff also reported panic attacks occurring during

his sleep, but ALJ Reynolds found the record showed various reports of panic attacks in response to environmental stresses such as a motor vehicle accident and an argument with his daughter. And while paramedics responded to an anxiety attack suffered by Plaintiff in January 2017, Plaintiff refused further care or transportation to an emergency center. ALJ Reynolds observed that while these anxiety reactions did not prompt further sustained deterioration in this functional area even when stressed, Plaintiff would do best in settings with little to no stress.

In addition to finding that the paragraph B criteria were not satisfied given the absence of at least two marked limitations or at least one extreme limitation, ALJ Reynolds also found that the evidence failed to establish the presence of "paragraph C" criteria of listings 12.04 and 12.06 and thus failed to establish that Plaintiff suffered from a "serious and persistent" mental disorder. Put simply, ALJ Reynolds found that to meet these criteria, Plaintiff would require a mental disorder persisting for two years or more with minimal capacity to adapt to environmental changes or new demands even despite treatment. The ALJ based this conclusion on a finding that medical reports established Plaintiff's response to treatment without intrusive or cumbersome demands and improvement in Plaintiff's substantive ability to adapt to changes even in the presence of stressors. The ALJ further found that Plaintiff did not require a structured setting nor any assistance in performing and completing simple, routine, and basic tasks.

After using the paragraph B criteria to rate the severity of Plaintiff's mental impairments as required in steps 2 and 3, ALJ Reynolds moved on to the mental residual functioning capacity assessment that comprises steps 4 and 5 of the sequential evaluation and considers the degree of limitation found in in the mental functional analysis of steps 2 and 3.

ALJ Reynolds found the record medical evidence supported the finding that Plaintiff's anxiety-related disorder decreased in severity at the time of the CPD in 2009. In support, ALJ

Reynolds noted that around that time, Plaintiff was determined to be stable with a Global Assessment of Functioning ("GAF") score of 70 and from late 2010 through early 2013, Plaintiff's GAF scores ranged from 50 to 70.  Plaintiff was stable without any changes made to his treatment and without medication side effects; ALJ Reynolds noted that the treatment sessions were 15 minutes or less once every two months and the treating notes suggested that this meant the impairment was of minimal complexity.  Contemporaneous clinical notes referred to Plaintiff's symptoms as well controlled and reported that Plaintiff consistently stated that he suffered no medication side effects.

ALJ Reynolds further observed that the record evidenced improvement on May 23, 2013, noting the reduction of acuity and the improvement in Plaintiff's daily living activities with no medication adjustments or reported side effects.  The October 2013 Assessment Rating document reflected no more than slight problems in all assessment areas, except for the anxiety scale, which reflected moderate problems.  Plaintiff's GAF score of 57 on March 20, 2014 further suggested to ALJ Reynolds that there was no evidence of deterioration, particularly given that there was documented improvement on the anxiety scale reflecting only slight to moderate problems.  Further record evidence documented that in July 2014 Plaintiff demonstrated appropriate affect, orientation to time, place and person, alter sensorium, unremarkable speech, fair sleep and appetite, fair eye contact, fair reliability, fair concentration, fair insight, fair judgment, intact thought process, and unremarkable thought content.  And while an Assessment Rating conducted in December 2014 reflected moderate problems on the anxiety scale, ALJ Reynolds found that the duration of the medication management sessions, which were only 12 minutes long, still indicated that the impairment was of low complexity.

ALJ Reynolds found that this pattern continued through 2017, noting that Plaintiff

continued to respond to treatment in which his symptoms were documented as low complexity, and he continued to receive GAF scores of 57.  Clinical notes documented brief visits and Plaintiff reported no side effects from his medication.

ALJ Reynolds found these medical improvements related to Plaintiff's ability to work because by April 2013, his impairments were no longer the medical equivalent of the listing Plaintiff met at the time of the CPD in 2009.  ALJ Reynolds reiterated that Plaintiff experienced a decrease in the frequency and severity of his anxiety and panic attacks; overall, Plaintiff's symptoms were well controlled with treatment and his ability to function appropriately, consistently, and independently had increased.  Assessments made by state agency psychological consultants reported that while Plaintiff's anxiety disorder was severe, it resulted in only moderate mental limitations when controlled with his medication.

ALJ Reynolds gave weight to the assessment the first of the consultants, Dr. Sally Rowley, Psy.D., citing its consistency with the substantial evidence of record documenting Plaintiff's improvement with treatment and consistent GAF scores between 50-70.  Dr. Rowley opined in April 2013 that Plaintiff was able to understand and remember simple and detailed instructions and could execute simple instructions; he could accept criticism from supervisors and interact with coworkers; and he could work in a low demanding setting.

ALJ Reynolds likewise gave weight to the second consultant, Dr. Candace Mihm, Ph.D. Dr. Mihm similarly opined that Plaintiff was capable of understanding and remembering simple and complex instructions, completing simple and some complex tasks and maintaining concentration, persistence, and pace throughout the workday with ordinary supervision.  Dr. Mihm also found that Plaintiff could relate to the public, co-workers, and supervisors adequately in the workplace but noted that Plaintiff might perform best in a setting requiring minimal interaction

with the public due to his anxiety symptoms; she further opined that he could avoid ordinary hazards, adapt to change in the workplace provided they were introduced slowly, and get goals and plans in the work setting.  ALJ Reynolds, however, gave no weight to the portion of Dr. Mihm's assessment that Plaintiff experienced moderate limitations in his daily living activities, finding it was inconsistent with the record evidence beginning in 2013 denoting Plaintiff's ability to engage in a range of functional activities, and noting that Dr. Mihm did not have the benefit of the evidence submitted at the hearing level.

ALJ Reynolds also found that Plaintiff's impairments as of April 12, 2013, imposed more than a minimal limitation on his ability to perform basic work activities and rose to the level of a severe impairment or combination of impairments under 20 CFR 404.1594(f)(6).  In reaching this finding, ALJ Reynolds observed Plaintiff's ongoing need for medication management and monitoring of his anxiety disorder, along with documented reports of his obesity and worsening joint degeneration of his left knee.  ALJ Reynolds gave weight to the examination of Dr. Michael Pfeffer, M.D., who documented following a July 2013 exam that Plaintiff's problems with his left knee imposed a mild limitation with regard to prolonged standing, walking, kneeling, bending, or stooping.  Dr. Pfeffer also noted during the exam that Plaintiff experienced some discomfort and difficult regarding a full range of motion, but that Plaintiff did not use an assistive device, was able to ambulate about the room as required for his exam (from chair to the exam table), demonstrated deep tendon reflexes, no sensory deficits, and no muscle atrophy.  ALJ Reynolds found Dr. Pfeffer's opinion to be consistent with the record evidence and Plaintiff's April 2013 statement that he did not have knee problems and had not been treated by a doctor for a knee impairment. ALJ Reynolds concluded that no treating source opined to the contrary.

ALJ Reynolds gave limited weight to the July 2013 examination of Dr. Olga M. Garcia,

who concluded that Plaintiff's severe knee impairment limited him to light work with some postural limitations.  ALJ Reynolds found that Dr. Garcia, a state agency medical examiner, was neither a treating or examining source, and her findings were contradicted by Plaintiff's lack of ongoing treatment record through the time of Dr. Garcia's assessment.  As to the lack of treatment, ALJ Reynolds observed that Plaintiff had no barrier to treatment access given that his disability benefits came with medical benefits as well.

ALJ Reynolds considered the opinion of Dr. Jorge De Diego remarked on the progressive nature of Plaintiff's knee impairment in a June 6, 2016 report but otherwise offered findings that ALJ Reynolds found counterintuitive to gross or marked functional deficits.  Dr. De Diego reported an antalgic gait, decreased range of motion of the left knee and posterior Baker's cyst of the left knee joint, but his examination also documented otherwise normal findings, including joint stability, a normal bilateral range of motion and hip strength, as well as normal bilateral muscle tone and quadricep and hamstring strength.  Dr. De Diego commented on the importance of Plaintiff maintaining a normal or reduced body weight to reduce stress on the knee joint and referring to it as a cornerstone of nonoperative management.  An MRI performed on the left knee at approximately the same time confirmed severe degenerative changes, but no surgery was recommended.

In concluding that Plaintiff had the RFC to perform the full range of light work with limitations described above, ALJ Reynolds stated that her findings reflected all symptoms that could reasonably be accepted as consistent with objective medical and other evidence, and her findings also considered opinion evidence as required.  She explained that, in accordance with the requirement, she first considered whether there was an underlying impairment that could be reasonably expected to produce Plaintiff's symptoms, and then considered the degree to which the

16

intensity, persistence, and limiting effect of those symptoms limited Plaintiff's ability to engage in basic work activities.  ALJ Reynolds explained that where a claimant's statements regarding the limiting effect of symptoms are not substantiated by objective medical evidence, this required a credibility determination on the statements made when compared against the entire case record.

Here, ALJ Reynolds noted that Plaintiff reported difficulty with daily living and working activities arising from his panic disorder with agoraphobia and claimed he was unable to be alone or do anything alone.  ALJ Reynolds further noted that Plaintiff testified at the hearing to these same symptoms and stated that he was unable to be with anyone but his parents and wife, that he suffered from three panic attacks a week despite medication, and he could walk no more than half a block in pain.  Plaintiff also testified that he was advised that he may need a total knee replacement.

ALJ Reynolds found that Plaintiff's inconsistent statements regarding issues significant to the disability determination undermined his credibility on the whole.  First, ALJ Reynolds observed that Plaintiff made conflicting statements about his ability to understand and communicate in English, citing statements made by Plaintiff during the March and July 2013 hearings that he was unable to communicate in English; ALJ Reynolds asserted these statements were contradicted by (1) Plaintiff's acknowledgement during one hearing that he sought an interpreter because he was angry at being required to attend the hearing, (2) Plaintiff's completion of several forms in English (one of which acknowledged his ability to speak and understand English without indicating an alternate language preference), and (3) the fact that Plaintiff arrived in the United States at 9 years old, attended some high school, and is a United States Citizen.

ALJ Reynolds next noted that Plaintiff's claim that he cannot drive, has a fear of doing everything, and must constantly be with his mother was contradicted by record evidence that (1)

17

Plaintiff's mother does not live with him and only visits to assist with certain chores; (2) that Plaintiff attends church weekly; and (3) that Plaintiff drove during the relevant period, including short distances to the supermarket and to complete other errands.

Additionally, ALJ Reynolds found that Plaintiff's claim to suffer from panic disorder with agoraphobia was undermined by the record evidence indicating both that Plaintiff suffers from panic disorder *without* agoraphobia and that he has experienced improvement in his impairment since the comparison point decision in 2009. Plaintiff's testimony at the March 2018 hearing that he suffers from medication side effects is similarly undermined by the clinical notes documenting no side effects and that his symptoms are well controlled with medical treatment.

ALJ Reynolds concluded that the evidence on record supported a finding that Plaintiff's medically determinable impairment could have been reasonably expected to produce the symptoms alleged. She also concluded, however, that Plaintiff's own statements regarding the intensity, persistence, and limiting effect of those symptoms were not credible to the extent they were inconsistent with the RFC assessment.

Plaintiff's claimed severity of his impairments and purposed limitations was undermined, found ALJ Reynolds, by medical reports that did not reflect impairments of a severity that would preclude all physical and mental demands. Rather, the record medical evidence and opinions reflected Plaintiff's response to treatment and documented the absence of substantive deterioration to the extent Plaintiff alleged, further contradicting Plaintiff's claims. For example, ALJ Reynolds cited testimony from Plaintiff and his mother that Plaintiff suffered from medication side effects (including memory issues) and ongoing panic attacks three times weekly that required repeated rescue. Record evidence, however, reflects emergent care for just three panic attacks in in response to significant stressors 2010, 2014, and 2017, respectively, and affirmatively reflects that Plaintiff

suffered no side effects from his medication.  ALJ Reynolds found that the medical improvement reflected in the record further contradicted Plaintiff's claims as to the severity of his impairments, as did the documentation of Plaintiff's functional activities through the years.  Overall, these activities were inconsistent with a total inability to engage in work activity.

ALJ Reynolds gave the opinion of Dr. Tauler, Plaintiff's treating source, limited weight, noting that the opinion dated March 2014—that Plaintiff was unable to work—provided neither functional limitations nor date parameters and was inconsistent with the record evidence.  ALJ Reynolds further noted that Dr. Tauler's contemporaneous clinical notes reported that Plaintiff was stable with treatment, had moderate symptoms at worst, and reported minimal if any medication side effects.  Dr. Tauler also assigned Plaintiff GAF scores ranging from 55-70 during the relevant period.  ALJ Reynolds noted that opinions offered on the ultimate issue reserved for the Commissioner cannot, under the regulatory scheme, be entitled to controlling weight.

For the same or similar reasons, ALJ Reynolds found Dr. Tauler's March 2015, July 2015, October 2015, and February 2018 opinions were similarly entitled to limited weight.  Dr. Tauler's last documented office visit with Plaintiff on December 19, 2017, noted that Plaintiff reported panic-like attacks but stated that they were less frequent; Plaintiff also reported at that time compliance with his treatment plan and stated that he had no side effects from his medication.  ALJ Reynolds found internal inconsistencies in Dr. Tauler's opinion, noting that, for example, the doctor's July 2015 report that Plaintiff had marked and extreme limitations was at odds with his simultaneous opinion that Plaintiff was able to manage his benefits in his own best interest.  ALJ Reynolds also concluded that Dr. Tauler's treatment documented in virtually each opinion—limited to short medication management sessions documenting moderate symptoms—was inconsistent with the type of treatment one would expect of an individual who was so limited.

ALJ Reynolds observed that under the regulations, GAF ratings must be considered within the context of the assessment and cannot be used by themselves to raise or lower someone's level of function given the inherent snapshot nature of the rating.  Dr. Tauler at one point recorded a GAF score of 49 for Plaintiff, but ALJ Reynolds found that the doctor otherwise consistently documented GAF scores for Plaintiff that ranged from 55 to 70, with few scores between 50 and 55, and none lower than 50.  ALJ Reynolds found that only the GAF scores ranging from 55 to 70 were supported by the record evidence of moderate depression and for that reason she gave these GAF scores significant weight, though she still noted that the scores were still not dispositive of Plaintiff's ability to engage in substantially gainful activity.

Based on the VE's testimony, ALJ Reynolds found that Plaintiff was unable to perform his past relevant work as a construction worker and donut maker as of April 1, 2013.  The VE classified Plaintiff's work as a construction worker as semi-skilled (SVP 4) heavy, and his work as a donut maker as semi-skilled (SVP 4) medium.  When asked to consider a hypothetical individual with Plaintiff's limitations, the VE testified that such a person could not perform past relevant work.

Based on Plaintiff's age, education, work experience, and residual functional capacity based on the impairments present as of April 1, 2013, ALJ Reynolds found that Plaintiff was able to perform a number of jobs in the national economy.  ALJ Reynolds recognized that Plaintiff's ability to perform work at the light exertional level was compromised by non-exertional limitations, and predicated on these parameters, the VE testified that such an individual would have been able to perform the requirements of representative unskilled (SVP 2) light occupations such as an office helper (207,000 jobs nationally), an office mail clerk (122,000 jobs nationally), or a hotel housekeeper (137,000 jobs nationally).  Relying on this testimony, which in some areas was based on the VE's experience as a vocational rehabilitation counselor, ALJ Reynolds found

Plaintiff capable of adjusting successfully to work existing in significant numbers in the national economy and thus issued a finding of "not disabled" to be appropriate under the framework set forth.

## IV.    STANDARD OF REVIEW

A district court's review of the ALJ's decision is limited to determining whether the decision as a whole is supported by substantial evidence in the record. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Substantial evidence is defined in this context as relevant evidence that a reasonable person would accept as adequate to support the conclusion reached. *Williams v. Astrue*, 416 Fed. App'x. 861, 862 (11th Cir. 2011); *see also Fiebel v. Comm'r*, No. 18-80642, 2019 WL 4694220, at *1 (S.D. Fla. Aug. 15, 2019). In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the ALJ's decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

If the ALJ's decision is found to be supported by substantial evidence, then the reviewing court must affirm the decision, even if proof preponderates against it. *Dyer*, 395 F.3d at 1210. It is not the place of the reviewing court to reweigh the evidence or substitute its judgment for that of the ALJ. *Id.* This restrictive standard of review set out above, however, applies only to findings of fact. No presumption of validity attaches to the conclusions of law found by the ALJ, including the determination of the proper standard to be applied in reviewing claims. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). The failure by the ALJ to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## V.    DISCUSSION

Plaintiff first argues that the ALJ's RFC finding here is necessarily deficient because the VE's testimony that Plaintiff could perform certain jobs is inconsistent with the information contained in the Dictionary of Occupational Titles ("DOT") and its companion publication the Selected Characteristics of Occupations ("SCO"), and ALJ Reynolds' failure to resolve this conflict renders her determination not supported by substantial evidence.  Plaintiff next argues that ALJ Reynolds failed to give proper weight to the medical opinion of Plaintiff's treating psychiatrist Dr. Tauler and failed to explain what weight, if any, was given to the testimony of Medical Expert Dr. Nathan Strahl, M.D.  Plaintiff additionally argues that ALJ Reynolds overestimated Plaintiff's RFC by rendering a determination that was inconsistent with the record and the opinions of Dr. Tauler and was based in party on a hypothetical posed to the VE that failed to sufficiently account for Plaintiff's impairments.  Plaintiff lastly argues that ALJ Reynolds' credibility assessment of Plaintiff is inaccurate to the extent it was based on her belief that Plaintiff misrepresented his ability to speak and understand English.

### A.  Findings Based on the Testimony of the Vocational Expert

The VE testified, after consulting the DOT, that Plaintiff could perform the job requirements of an office helper, mail clerk, and housekeeping cleaner.  Yet, argues Plaintiff, the jobs of office helper and mail clerk are designated as Reasoning Level 2 jobs by the DOT; such jobs require an individual to be able to "apply commonsense understanding to carry out detailed but uninvolved written or oral instructions."  Plaintiff argues that the VE's determination that Plaintiff could execute job requirements of a Reasoning Level 2 job is at odds with the ALJ's RFC finding regarding Plaintiff's limitation to "understand, remember, and carry out simple, routine, repetitive tasks and instructions" (ECR No. 20 at 7 (citing *Albra v. Commissioner of Social*

*Security*, Case No. 18-12197 (September 8, 2020))).  Plaintiff avers that the ALJ's failure to resolve this conflict meant that Plaintiff's ability to perform the jobs of office helper and mail clerk cannot constitute substantial evidence on which the ALJ could rely to deny Ramos' disability benefits.

Plaintiff additionally argued that a conflict exists between the VE's testimony regarding the mail clerk and housekeeping cleaner jobs and ALJ Reynolds' RFC finding that Plaintiff "should not engage in fast paced assembly-line type production work."  Plaintiff argues that the roles of mail clerk and housekeeping cleaner are inherently production-type jobs requiring the worker to maintain his pace consistently throughout the day, relying on the SCO to proffer that both jobs offer little to no opportunity to deviate from the task at hand without repercussion for failing to maintain the steady flow of work.  The SCO lists worker characteristics for all jobs catalogued by the DOT, one of which is an "R" designation indicating that the job involves "performing repetitive or short-cycle work"; Plaintiff notes that both mail clerk and housekeeping cleaner carry an "R" designation in the SCO.  Plaintiff then cites the Revised Handbook for Analyzing Jobs ("RHAJ"), another Department of Labor publication to which the SCO refers, which utilizes a comparable "R" factor denoting where work is "repetitive or short cycle," meaning that it requires performing repetitive tasks over and over at a set pace with little opportunity for diversion or interruption; the RHAJ offers as an example of such work one who "sorts incoming or outgoing mail into mail-rack pigeonholes or into mail sacks according to destination" (*id.* at 9 (citing U.S. Dep't of Labor, *Revised Handbook for Analyzing Jobs* 10-2 (1991))).

Plaintiff argues that, taken together, the mail clerk and housekeeping cleaner roles require "work done at a forced or assembly-line pace," which conflicts with the ALJ's RFC finding and undermines the VE's testimony.  Plaintiff avers that the ALJ's failure to discharge her affirmative

duty to identify and resolve conflicts between the VE's testimony and information in the DOT renders the ALJ's decision based on that contradicted testimony and is thus not supported by substantial evidence (*id*. at 10 (citing SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000))).

Defendant denies that there is an apparent conflict between Plaintiff's limitations set forth in the RFC and the VE's recommendation of the office helper occupation based on its assignment of a reasoning level of 2 by the DOT,[3] relying on the Eleventh Circuit's decision in *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021).   I concur that *Buckwalter*, decided after Plaintiff filed his briefing in this matter, is unequivocal in its holding that there is no apparent conflict "between one's limitation to following simple instructions and positions that require the ability to follow 'detailed but uninvolved' instructions [as is required in occupations with a reasoning level of 2]." *Id.*   As the Court observed, the term "simple" does not plainly contradict the term "detailed," with the main difference between reasoning levels 1 and 2 being the length of the instructions rather than the complexity and buttressing this interpretation with level 2's requirement that the instructions be "uninvolved." *Id*. at 1323*; see also Valdez v. Comm'r of Soc. Sec.*, 808 Fed. Appx. 1005, 1008 (11th Cir. 2020).  Accordingly, I find no apparent conflict between the RFC and the VE's testimony that Plaintiff could fulfill the duties of an office helper.

Even if the Court were to find a conflict between the RFC and the VE's recommendation of the office helper role, Defendant argues that the hotel housekeeper occupation would be sufficient to satisfy its burden, given that there are approximately 137,000 hotel housekeeper jobs available nationally, a figure that the Eleventh Circuit has determined is well above the "significant number requirement" (ECF No. 23 at 25 (citing *Atha v. Comm'r of Soc. Sec.*, 616 F. App'x 931,

---

[3] Defendant raises the point that the mail clerk role actually carries a reasoning level of *3* rather than 2 as Plaintiff states, but Defendant argues that the VE's identification of the mail clerk role is a moot point given the availability of the other occupations suggested.

935 (11th Cir. 2015); *Allen v. Bowen*, 816 F.2d 600, 602-03 (11th Cir. 1987))).  The Court found in *Valdez* that even where an ALJ erred in finding that a claimant could perform a reasoning level 3 job given his limitations, such error was harmless because the ALJ found that the claimant could fulfill the duties of a reasoning level 1 job.  808 Fed. Appx. at 1009.

The claimant in *Valdez*, however, did not challenge the reasoning level 1 occupation as inconsistent with the RFC, while Plaintiff here claims that the housekeeping cleaner role recommendation conflicts with the RFC finding that Plaintiff should not engage in fast paced assembly-line type production work.  I find no conflict, however, and concur with the argument that description of a role as "repetitive" and "short cycle" is not synonymous with fast paced or assembly line-type work.  This finding is most consistent with the DOT description of the hotel housekeeper role, which is as follows:

> Cleans rooms and halls in commercial establishments, such as hotels, restaurants, clubs, beauty parlors, and dormitories, performing any combination of following duties: Sorts, counts, folds, marks, or carries linens. Makes beds. Replenishes supplies, such as drinking glasses and writing supplies. Checks wraps and renders personal assistance to patrons. Moves furniture, hangs drapes, and rolls carpets.

DOT § 323.687-014, 1991 WL 672783.  This definition makes no comment on the pace of the work, and while the duties are inherently repetitive, to define it as synonymous with assembly-line type production work is a false equivalency lacking in support.  Both types of work are repetitive, but that does not transmogrify hotel housekeeping work into assembly line work.  Plaintiff offers no basis on which to base a finding that housekeeping work is fast-paced, assembly line type production work.

Accordingly, because the VE recommended roles that are not in any apparent conflict with the ALJ's findings in the RFC, there was no conflict to resolve, and any error made in finding that Plaintiff could fulfill the duties of a mail clerk, with a reasoning level 3, was ultimately harmless, because the other recommended roles are found in significant numbers in the national economy.

### B. Assessment of Opinion Evidence

#### i. Dr. Strahl

Plaintiff argues that the ALJ failed to articulate in her determination the weight, if any, she accorded the opinion of testifying ME Dr. Strahl.  Dr. Strahl testified at the March 2015 hearing that based on medical records from 2009 through 2013, Plaintiff's panic attacks had improved, and Plaintiff was stabilized with medication. (ECF No. 16-1, at 1010-11).  ALJ Reynolds gave Dr. Strahl significant weight in her first decision but he did not testify at the second hearing, and the ALJ's second opinion—at issue in this appeal—does not mention him at all. Plaintiff avers the failure to expressly disclose what weight she accorded to his testimony raises concerns about the extent to which her decision was influenced by Dr. Strahl.  Plaintiff argues that this is particularly so because the second decision "doubles down on [the] narrative that [Plaintiff] was no longer disabled based on the occurrence of 'medical improvement,'" which mirrors Dr. Strahl's original opinion.  To the extent ALJ Reynolds did not rely at all on Dr. Strahl's opinion in rendering her decision, she could have said so stated but was instead silent, notes Plaintiff.

At the core of Plaintiff's argument here is the concern that ALJ Reynolds in fact *did* rely on Dr. Strahl's opinion in rendering her August 2018 determination, and because Plaintiff also argues that Dr. Strahl's opinion should have been stricken from the record, giving Dr. Strahl's opinion any weight at all would then be unjust.  Plaintiff relies heavily on the fact ALJ Reynolds' present determination largely tracks her prior determination, and that prior determination articulated ALJ Reynolds' reliance on Dr. Strahl.  ALJ Reynolds did however support her finding that Plaintiff is no longer disabled on substantial evidence, and Plaintiff has not demonstrated how he is prejudiced by her failure to articulate what weight she accorded this *additional* evidence, if she did.

Moreover, an ALJ's failure to articulate what weight she accorded a particular opinion is harmless error where that opinion is consistent with the findings about the claimant's mental residual functional capacity. *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir.1983); *see also Sarria v. Comm'r of Soc. Sec.*, 579 Fed. Appx. 722, 724 (11th Cir. 2014) (citing *Diorio*, 721 F.2d at 728); *East v. Barnhart*, 197 Fed. Appx. 899, 901 n.3 (11th Cir. 2006) (same); *Wright v. Barnhart*, 153 Fed. Appx. 678, 684 (11th Cir. 2005) (same)). As Plaintif alleges, Dr. Strahl's opinion is entirely consistent with ALJ Reynolds' determination, and thus the failure by ALJ Reynolds to explain what weight she placed on the opinion of Dr. Strahl was harmless error that does not warrant reversal.

### ii. Dr. Tauler

Plaintiff avers that the ALJ's determination runs afoul of the "treating physician's rule," which requires the findings of the treating physician as to impairment severity be given "controlling weight" so long as they are well-supported by medically accepted clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record (ECF No. 20 at 14 (citing 20 C.F.R. § 404.1527(c)(2))). The regulation also requires the ALJ to give substantial or considerable weight to the treating physician's opinion unless good cause exists. 20 C.F.R. § 404.1527; *see Phillips*, 357 F.3d at 1241 (finding that good cause exists when the "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records"). And Plaintiff avers that these reports are considered especially valuable when the treatment period extends over a considerable length of time, as Dr. Tauler's treatment of Plaintiff has (ECF No. 20 at 17 (citing *Chester v. Bowen*, 792 F.2d 129, 130 (11th Cir. 1986))).

27

Plaintiff argues that ALJ Reynolds' decision to give Dr. Tauler's findings little weight on the basis that they were inconsistent with his treatment notes does not rise to the level of good cause (ECF No. 20 at 16 (citing *Castro v. Acting Comm'r of Social Security*, Case No. 18-14455 (August 29, 2019) (stating that the "treatment notes treatment notes reflected [the physician's] observations of [his patient] during treatment appointments in a medical environment," "But in the assessments [the treating physician] opined about [the claimant]'s abilities 'to do work-related activities on a day-to-day basis in a regular work setting.' […] As other courts have recognized, 'the work environment is completely different from home or a mental health clinic.'"))).   In according Dr. Tauler's opinion little weight, Plaintiff additionally argues that ALJ Reynolds did not in her opinion address all of the factors articulated in 20 C.F.R. § 404.1527(c), as he argues is required when not giving the treating source's medical opinion controlling weight; these factors include the examining relationship, treatment relationship, length of the treatment relationship and frequency of examination, nature and extent of the treatment relationship, supportability, consistency, specialization, and other factors tending to support or contradict the medical opinion (ECF No. 20 at 17 (citing 20 C.F.R. § 404.1527(c))).

Defendant argues that in the first instance, Dr. Tauler's opinion that Plaintiff was unable to work could by definition not be controlling because, even from a treating source, this was an issue reserved to the Commissioner given its nature as an administrative and case dispositive finding (ECF No. 23 at 6 (citing 20 C.F.R. § 404.1527(d); *Coheley v. Soc. Sec. Admin.*, 707 F. App'x 656, 659 (11th Cir. 2017) (holding that physician's opinion that claimant was "unable to work" was entitled to no weight because that is an administrative determination reserved to the Commissioner))).   And Defendant argues that Dr. Tauler's opinions, as to Plaintiff's inability to work and that he had marked or extreme limitations, conflicted with the record evidence, as the

ALJ found.  In particular, Dr. Tauler's clinical notes documented Plaintiff's stability with treatment, a report of at most moderate symptoms, minimal if any medication side effects, and brief medication management sessions once every two months (*id.* at 7 (citing ECF No. 16 at 43-44, 705, 707-08, 711-15, 714-15, 716-17, 719, 721, 724, 728, 725, 729, 751, 762, 833-35, 838, 840, 842, 846, 848, 850, 854, 856, 862-64, 922, 924, 926, 928, 930, 932, 934, 936, 938, 940, 942, 944, 946, 950, 954, 958-59, 962-63, 966-67, 970, 972-73; *Peters v. Astrue*, 232 F. App'x 866, 871 (11th Cir. 2007) (noting "conservative" treatment is a valid reason to discount a treating physician's opinion))).

Defendant cites the ALJ's further acknowledgement that while certain clinical notes suggested a lack of response to treatment and that Dr. Tauler assigned one GAF score of 49, these findings on Dr. Tauler's part were contradicted by the fact that he routinely assigned Plaintiff GAF scores ranging from 55 through 70 during the relevant period and during a December 2017 visit, Dr. Tauler observed improvement and reduced panic attacks since last seen.  ALJ Reynolds observed that Dr. Tauler's July 2015 opinion—which was made up of check-box and fill-in-the-blank answers—that Plaintiff had marked and extreme limitations was contradicted by his statement in that same opinion that Plaintiff could manage his benefits.  In addition to the ALJ's conclusion that Dr. Tauler's opinion was internally inconsistent, the ALJ found certain opinions (March 2014 and 2015) were devoid of a discussion on Plaintiff's functional limitations, and his general opinion as to Plaintiff's inability to work was further contradicted by the record evidence regarding Plaintiff's regular activities (for example, attending weekly church services, running errands, and his work activity between 2003 and 2009).

Plaintiff's reliance on *Castro* is misplaced—the Eleventh Circuit in *Castro* found based only on the specific facts at bar that no reasonable person would conclude that observations made

by the doctor in the treatment notes would contradict the doctor's opinion that Castro was not functional, for despite the observation in those notes that Castro exercised good judgment, insight, and thoughts, her medical history *also* reflected hospitalization for depression and suicidal ideation, and GAF scores fluctuating from 30 to 55, 783 F. App'x at 950-51, a medical history not present for Plaintiff here.  In coming to its conclusion, however, the Eleventh Circuit stated that it agreed with the Commissioner "that good cause to give less weight to a treating source's opinions exists when the source's opinions are 'inconsistent with [the source's] own medical records.'"  *Id.* at 956.  It was simply the case *as to Castro* that, given the other record evidence, the treatment observations did not undermine the treating physician's ultimate opinion.

ALJ Reynolds' determination here that good cause existed to give Dr. Tauler's opinion little weight also does not rest entirely on its inconsistency with his clinical observations.  The ALJ considered a range of other record evidence in coming to this conclusion, including Plaintiff's regular activities, Plaintiff's GAF scores, and Plaintiff's treatment modality, among other things.[4] Based on this combined record evidence, ALJ Reynolds concluded that she could not square Dr. Tauler's opinion with the inconsistences in his own treatment notes and the other evidence of record.  I find that this constitutes a sufficient basis to clear the substantial evidence threshold.  *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is 'more than a mere scintilla.' (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938))).

---

[4] ALJ Reynolds' failure to explicitly articulate each 20 C.F.R. § 404.1527(c) factor in evaluating Dr. Tauler's opinion is not required under the applicable regulations.  *Brock v. Comm'r of Soc. Sec.*, 758 F. App'x 745, 751 (11th Cir. 2018).

### C.  Substantial Evidence

Plaintiff argues that the substantial evidence of record contradicts the ALJ's assessment of it and that ALJ Reynolds is only able to reach the conclusion she does through inappropriately discounting the substantive evidence of record.  Plaintiff avers that this inadequate assessment leads ALJ Reynolds to overestimate Plaintiff's RFC, which in turn undermines the legitimacy of the VE's testimony.  Specifically, Plaintiff argues that the hypothetical posed by ALJ Reynolds to the VE failed to account for all of Plaintiff's functional limitations and thus cannot be construed as substantial evidence supporting ALJ Reynolds' finding that there were significant numbers of jobs in the national economy that Plaintiff could perform (ECF No. 20 at 18 (citing *Samuels v. Commissioner of Social Security*, Case No. 18-14562 (11th Cir. May 13, 2020))).

As described above, ALJ Reynolds proffered substantial evidence for her decision to accord Dr. Tauler's opinion limited weight.  As to the claim that the RFC generally overstates Plaintiff's actual abilities, the substantial evidence in the record shows otherwise.  ALJ Reynolds accounted for Plaintiff's ability to drive, run errands, attend weekly church services and remain for their full duration, care for himself independently, keep track of his funds, make simple meals, watch television, and manage his own appointments.  She observed that Plaintiff's GAF scores generally reflected only moderate impairments, that Plaintiff was stable with treatment and experienced minimal to no side effects from his medication, and that clinical notes document in real time that Plaintiff appeared alert and oriented with fair reliability, concentration, and judgment, demonstrated intact thought processes, and unremarkable thought content.

The RFC finding also reflects consideration of Plaintiff's mental limitations arising from his anxiety disorder, including the following limitations:  (1) simple, routine, repetitive tasks; (2) two-hour periods of concentration; (3) judgment on only simple tasks; (4) no more than occasional

contact with coworkers; (5) working in small settings with no more than five people at a time; (6) minimal supervision; (7) set, routine procedures; (8) few changes during the workday; (9) no more than superficial interaction with the public on routine matters; and (10) no fast paced assembly line work.  The hypotheticals ALJ Reynolds posed to the VE reflected these exact limitations (ECF No. 16 at 79-84).  Despite Plaintiff's allegation that this list fails to account for his limitations, he does not identify a single limitation that should have been included but was not.  Rather, he makes an axiomatic assertion that the hypothetical was flawed, which is not sufficient to base a finding that the RFC is not based on the substantial evidence of record.

### D.  Assessment of Claimant's Credibility

ALJ Reynolds found that Plaintiff's credibility was undermined in part by his conflicting statements as to his ability to understand and communicate in English and in part by statements regarding his subjective complaints that were belied by the evidence of record.  Plaintiff argues that in reaching this conclusion, the ALJ did not properly assess the record evidence, and suggests—but does not explicitly state—that ALJ Reynolds reached this finding because she was biased against Plaintiff after he filed an affidavit alleging mistreatment and bias at a hearing preceding the ALJ's first determination that Plaintiff was no longer disabled.

As held by the Eleventh Circuit, "credibility determinations are the province of the ALJ," and the court "will not disturb a clearly articulated credibility finding supported by substantial evidence." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (citations omitted).  ALJ Reynolds offers a clearly articulated credibility finding, citing not only what she concluded were inconsistencies regarding his ability to speak and understand English, but also substantial evidence of record that contradicted his self-reported complaints.  To the latter point, ALJ Reynolds relied on the following contradictions:  (1) Plaintiff claimed that he could not drive,

has a fear of doing everything, and must constantly be with his mother, but the record reflects, as discussed in more detail elsewhere, Plaintiff engages in a wide range of daily activities independently, without his mother, and some of which involve Plaintiff driving a vehicle; (2) Plaintiff claimed to suffer from panic disorder with agoraphobia but the record reflects only a diagnosis of panic disorder without agoraphobia and an improvement in his impairment since 2009; (3) Plaintiff testified in March 2018 that he suffered from medication side effects but clinical notes repeatedly document that he has minimal to no side effects and that his disorder is well controlled with medical treatment; (4) Plaintiff claimed to suffer from at least three severe panic attacks weekly and that at times Rescue needed to be called, but the record reflected only three instances from 2010 to 2017 in which Rescue was contacted in response to one of Plaintiff's panic attacks.[5]  As ALJ Reynolds observed, these representations and the record evidence contradicting them bears on the ultimate issue of the case.

Whatever statements ALJ Reynolds made regarding what she interpreted as misrepresentations about Plaintiff's English proficiency were thus ultimately gratuitous in light of the foregoing conflicts of record.  Accordingly, ALJ Reynolds was not "clearly wrong" to discredit Plaintiff's testimony and the record reveals no reversible error in her finding.  *See Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) (per curiam).

## VI.    RECOMMENDATION

The undersigned respectfully recommends that Plaintiff Alexis Ramos' Motion for Summary Judgment (ECF No. 20) be **DENIED** and that Defendant Kilolo Kijakazi's, Commissioner of the Social Security Administration, Motion for Summary Judgment with Supporting Memorandum of Law and Opposition to Plaintiff's Motion for Summary Judgment

---

[5] Plaintiff's mother explicitly testified that Rescue had to be called two to three times weekly; Plaintiff did not testify that Rescue needed to be called with this frequency but suggested in his testimony that it was a regular occurrence.

(ECF No. 23) be **GRANTED**.

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Federico A. Moreno, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation.  Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**RESPECTFULLY SUBMITTED** in Chambers, in Miami, Florida this 5th day of January, 2022.

LAUREN FLEISCHER LOUIS
UNITED STATES MAGISTRATE JUDGE